FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2012 JUN -5 PM 4: 05

CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| KEITH D. WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 310-078 |
| | ) |
| KAREN ZANDERS, Investigator, | ) |
| | ) |
| Defendant. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Coffee Correctional Facility in Nicholls, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983. The case is now before the Court on Defendant's motion for summary judgment. (Doc. no. 24.) Because Plaintiff has not filed any response, the Court deems the motion for summary judgment unopposed.[1] See Loc. R. 7.5. For the reasons set forth below, the Court **REPORTS AND RECOMMENDS** that

---

[1] The Clerk has given Plaintiff notice of Defendant's motion for summary judgment, has apprised him of his right to file affidavits or other materials in opposition, and has informed him of the consequences of failing to respond. (Doc. no. 25.) Moreover, after noting that Plaintiff had not responded, the Court issued an Order explaining the ramifications of failing to file a response to Defendant's motion, granting an additional 21 days in which to respond, and directing Plaintiff to file a response within the allotted time. (Doc. no. 26.) Accordingly, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (*per curiam*), are satisfied. Of course, the Court acknowledges that the mere fact that the instant motion is unopposed does not entitle the Court to grant the motion without considering the merits. United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Florida, 363 F.3d 1099, 1101 (11th Cir. 2004) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion.").

Defendant's motion for summary judgment be **GRANTED**, that a final judgment be **ENTERED** in favor of Defendant, and that this civil action be **CLOSED**.

I. **FACTS**

In his complaint, Plaintiff alleged that Defendant caused him to be arrested and prosecuted without probable cause for the theft of fuel credit cards from the company that employed him prior to his current incarceration, Husqvarna Outdoor Products, Inc. ("Husqvarna"). (Doc. no. 1.) The Court screened Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915(e) & 1915A and allowed Plaintiff to proceed against Defendant with § 1983 claims for false arrest and malicious prosecution.[2] (Doc. no. 12.)

In her motion for summary judgment, Defendant confirms that Plaintiff worked for Husqvarna, which has a manufacturing facility in McRae, Georgia, where it employs dispatchers, truck drivers, and other personnel to transport products to its clients. (Doc. no. 24-5 (hereinafter "Warnock Aff."), ¶ 3.) Plaintiff worked as a dispatcher in Husqvarna's McRae facility. (Id. ¶ 7; doc. no. 24-3 (hereinafter "Pl.'s Dep."), pp. 13-15.) Around the first part of 2008, several company credit cards used for purchasing fuel were stolen from the dispatch office and charged with thousands of dollars in purchases. (Warnock Aff. ¶¶ 2, 4.)

---

[2]In its screening Order, the Court noted that Plaintiff's complaint provided no indication as to whether he was arrested pursuant to an arrest warrant; however, giving his allegations a liberal construction, the Court allowed him to proceed with a false arrest claim as well as a claim for malicious prosecution, recognizing that the existence of an arrest warrant might affect the standards governing Plaintiff's Fourth Amendment claims. (Doc. no. 12, p. 3 n.3.) In addition, the Court recommended that two other Defendants named in Plaintiff's complaint be dismissed in a separately filed Report and Recommendation. (Doc. no. 10.) The Honorable Dudley H. Bowen, Jr., United States District Judge, adopted the Court's recommendation as the opinion of the District Court. (Doc. no. 13.)

2

Ronald Warnock, the Human Resources Manager for Husqvarna, notified the City of McRae Police Department of the theft, and Defendant was assigned to investigate the crime. (Id. ¶ 5; doc. no. 24-4 (hereinafter "Zanders Aff."), ¶ 2.) Based on information provided by Warnock, Defendant learned that there were six individuals who had access to the stolen credit cards, one of whom was Plaintiff.[3] (Zanders Aff. ¶ 3.) Warnock also informed her that one of the stolen credit cards had been used at a gas station in a nearby county. (Id. ¶ 4.) Defendant went to the gas station and obtained a copy of the receipt from the purchase made with the stolen card, as well as a surveillance video showing the individual making the purchase. (Id. ¶ 5.)

While the surveillance video did not show the face of the person who made the purchase, it did show that the individual was an African-American male with short hair who appeared to weigh at least 300 pounds. (Id. ¶ 7.) Defendant showed the video to Warnock, who described the individual in the video to the head of the Trucking Department and learned that Plaintiff matched that physical description. (Warnock Aff. ¶ 9.) After receiving this information from Warnock, Defendant met with Plaintiff at the Husqvarna facility. Upon seeing Plaintiff, Defendant immediately concluded that he was the same person shown in the gas station surveillance video because "[h]e had the same haircut, skin tone, and large build as the person on the video. Both were large black males who appeared to weigh at least 300 pounds." (Zanders Aff. ¶ 8.) Both Defendant and Warnock attest that Defendant is the

---

[3]Plaintiff confirmed in his deposition that he had access to the stolen credit cards. (Pl.'s Dep., p. 114.)

3

only person matching the physical description of the person in the video who knew about and had access to the stolen credit cards. (Id.; Warnock Aff. ¶ 11.)

Defendant asked Plaintiff to accompany her to the police station for questioning, and he complied with her request; the parties agree that Plaintiff was not under arrest at that time. (Zanders Aff. ¶ 9; Pl.'s Dep., pp. 75-77, 83-84.) At the police station, Defendant showed Plaintiff the surveillance video and told him that she thought he was the person shown in the video using the stolen credit card. (Zanders Aff. ¶ 9; Pl.'s Dep., pp. 79-80.) Plaintiff conceded that the person in the video was an African-American male with short hair, characteristics that he shared. (Pl.'s Dep., pp. 80, 85-86.) Plaintiff also admitted that he had a criminal history. (Id. at 82.) However, Plaintiff told Defendant that he could not be the person in the video because that individual appeared to weigh around 300 pounds, whereas he weighed around 400 pounds. (Id.) Plaintiff stated: "I know [the individual in the video] was nowhere near as big as I was because I take up a whole aisle when I walk." (Id. at 81.) Another officer, Chief Ken Wilcox, was present when Plaintiff saw the video and expressed his agreement with Defendant that Plaintiff was the person in the video. (Id.; doc. no. 24-1 (hereinafter "Wilcox Aff."), ¶¶ 4-5.)

Despite her belief that Plaintiff was the person in the video, Defendant decided to continue her investigation rather than arrest him. Plaintiff was allowed to leave, and it is undisputed that he was not arrested during his visit to the police station that day. (Pl. Dep., pp. 83-84; Zanders Aff. ¶ 9.) Plaintiff and Defendant never saw each other again. (Pl. Dep., p. 91; Zanders Aff. ¶ 13.)

4

On April 10, 2008, Defendant applied for a warrant to arrest Plaintiff for financial transaction card theft. (Zanders Aff. ¶ 11.) The Honorable Patsy S. Padgett, Telfair County Magistrate Judge, determined that the evidence provided by Defendant established probable cause, and she issued the arrest warrant the same day. (Id.; doc. no. 24-7, ¶¶ 5-6 & Attach. 1 (copy of warrant).) In June of 2008, officers with the Dodge County Sheriff's Department arrested Plaintiff pursuant to the warrant. (Pl. Dep., pp. 94-97.) Plaintiff spent one night in jail and was then released on bond. (Id. at 97.) Plaintiff was never again incarcerated on those charges. (Id. at 97-98.)

On November 8, 2008, a Telfair County grand jury indicted Plaintiff for one count of financial transaction card theft, in violation of O.C.G.A. § 16-9-31(a)(1),[4] and two counts of financial transaction card fraud, in violation of O.C.G.A. §§ 16-9-33(a)(2)(B).[5] (Id. at 95-96 & Ex. 1 (copy of indictment).) However, the prosecutor dropped the charges in June of

---

[4] O.C.G.A. § 16-9-31(a)(1) provides:

A person commits the offense of financial transaction card theft when . . . [h]e takes, obtains, or withholds a financial transaction card from the person, possession, custody, or control of another without the cardholder's consent; or who, with knowledge that it has been so taken, obtained, or withheld, receives the financial transaction card with intent to use it or to sell it or to transfer it to a person other than the issuer or the cardholder . . . .

[5] O.C.G.A. §§ 16-9-33(a)(2)(B) provides:

A person commits the offense of financial transaction card fraud when with intent to defraud the issuer; a person or organization providing money, goods, services, or anything else of value; or any other person, he . . . [o]btains money, goods, services, or anything else of value by . . . [p]resenting the financial transaction card without the authorization or permission of the cardholder.

5

2010, apparently because the surveillance video tape had been lost.[6] (Id. at 99-100; Wilcox Aff. ¶ 6.) Defendant resigned from the McRae Police Department in October of 2008, prior to Plaintiff's indictment. (Zanders Aff. ¶ 14.)

## II.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Applicable substantive law identifies which facts are material in a given case.[7] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the

---

[6]According to the Geogia Department of Corrections' online database, Plaintiff is currently incarcerated on theft and forgery convictions unrelated to the events in this case. See http://www.dcor.state.ga.us/GDC/OffenderQuery/jsp/OffQryForm.jsp?Institution=.

[7]The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Id. at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B. Merits of Plaintiff's Claims

As noted above, at issue in this case are Plaintiff's Fourth Amendment claims based on his allegedly improper arrest and prosecution. Defendant contends that summary judgment should be granted in her favor because probable cause existed for Plaintiff's arrest and prosecution, and because she is entitled to qualified immunity. (See doc. no. 24-1, pp.

7

10-17.) Defendant also argues that Plaintiff's false arrest claim is barred because he was arrested pursuant to a valid warrant and because the claim is untimely under the applicable statute of limitations. (Id. at 7-10.)

To prevail on a § 1983 claim, such those at issue here, "a plaintiff must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law. Holmes v. Crosby, 418 F.3d 1256, 1258 (11th Cir. 2005.) Law enforcement officials may violate an individual's Fourth Amendment rights by subjecting him to false arrest or malicious prosecution. See Grider v. City of Auburn, 618 F.3d 1240, 1256-57 (11th Cir. 2010) (discussing § 1983 false arrest and malicious prosecution claims).

However, a plaintiff cannot prevail on a false arrest claim or a malicious prosecution claim if probable cause exists for his arrest and prosecution. Id. at 1256 ("[T]he existence of probable cause defeats a § 1983 malicious prosecution claim."); Case v. Eslinger, 555 F.3d 1317, 1326 (11th Cir. 2009) ("The 'reasonableness' of a seizure or arrest under the Fourth Amendment turns on the presence of probable cause."). Probable cause exists "when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." Case, 555 F.3d at 1327 (quoting United States v. Gonzalez, 969 F.2d 999, 1002 (11th Cir. 1992)).

Here, Defendant has shown specific facts that demonstrate the existence of probable cause for Plaintiff's arrest and subsequent prosecution for financial transaction card theft and

fraud.[8] In particular, prior to Plaintiff's arrest, Defendant knew that Plaintiff had committed crimes in the past and that he was one of six individuals who had access to the credit cards that had been stolen from the dispatch office at Husqvarna's McRae facility. (Zanders Aff. ¶ 3.) She also saw a surveillance video showing a purchase made with a stolen card by an African-American male who appeared to weigh at least 300 pounds. (Id. ¶ 7.) Upon interviewing Plaintiff, Defendant immediately believed him to be the person from the video – an impression shared by two other individuals, Ronald Warnock and Chief of Police Ken Wilcox, both of whom saw Plaintiff as well as the surveillance video. (Id. ¶¶ 7-8; Warnock Aff. ¶¶ 9, 12; Wilcox Aff. ¶¶ 4-5.)

The only argument Plaintiff has advanced to challenge the existence of probable cause in this case is the allegation in his complaint, which he repeated in his deposition, that he weighed about 400 pounds, whereas the individual in the video weighed around 300 pounds. (Doc. no. 1, p. 4; Pl.'s Dep., pp. 80, 85-86.) This allegation is insufficient to show a lack of probable cause given that it is undisputed that the individual from the video was an African-American male with short hair who weighed several hundred pounds and given that

---

[8]As Defendant observes (see doc. no. 24-1, p. 11), regarding the malicious prosecution claim, "A grand jury indictment constitutes *prima facie* evidence that probable cause existed for the prosecution." Kelly v. Serna, 87 F.3d 1235, 1241 (11th Cir. 1996). Because Plaintiff was charged pursuant to a grand jury indictment, in order to prevail on his malicious prosecution claim, "he must show specific facts tending to show that probable cause did not exist for his arrest and that the prosecution was motivated by malice." Id. The allegations in Plaintiff's complaint fail to provide specific facts sufficient to show an absence of probable cause or the presence of malice as a motivation for his prosecution, and Plaintiff did not respond to Defendant's motion for summary judgment. Therefore, in addition to subsequently discussed facts provided by Defendant showing probable cause, Plaintiff has plainly failed to carry his burden regarding his malicious prosecution claim in light of the grand jury indictment.

9

everyone aside from Plaintiff who saw the video believed that he was the person in the video. Moreover, it is undisputed that Plaintiff is the only person who matches the above physical description who knew about and had access to the stolen credit cards.

Viewing this evidence in the light most favorable to Plaintiff, the Court finds that probable cause existed to believe that Plaintiff committed the crimes of financial transaction card theft and fraud.[9] See Illinois v. Gates, 462 U.S. 213, 245 n.13 (1983) ("[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."); Case, 555 F.3d at 1327 ("Probable cause does not require overwhelmingly convincing evidence, but only reasonably trustworthy information." (quoting Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996))).

Furthermore, Defendant has shown that she is entitled to qualified immunity, which is connected to the issue of probable cause when applied in the context of a Fourth Amendment § 1983 claim. Rushing v. Parker, 599 F.3d 1263, 1265 (11th Cir. 2010) ("Related to probable cause in [the context of a § 1983 Fourth Amendment claim] is the issue of qualified immunity."). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); Townsend v. Jefferson County, 601 F.3d 1152, 1157 (11th Cir. 2010). "To invoke qualified immunity, the official first must establish that [she] was acting within the scope of [her] discretionary authority when the alleged violation occurred." Townsend,

---

[9]The elements of these offenses are set forth above. See supra notes 3 & 4.

601 F.3d at 1158 (quoting Case, 555 F.3d at 1325). For an official's acts to be within her discretionary authority, they must be "(1) undertaken pursuant to the performance of her duties and (2) within the scope of her authority." Lenz v. Winburn, 51 F.3d 1540, 1545 (11th Cir. 1995).

If the defendant shows that she was acting within her discretionary authority, then "the plaintiff must show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." Townsend, 601 F.3d at 1158 (punctuation omitted) (quoting Holloman ex. rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004)). Furthermore, "[a] right is clearly established if, in light of already-existing law, the unlawfulness of the conduct is apparent, and if a constitutional rule applies with obvious clarity to give an official fair warning that violating that right is actionable." Bennett v. Hendrix, 423 F.3d 1247, 1255 (11th Cir. 2005) (internal citations omitted). "If reasonable public officials could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity." Storck v. City of Coral Springs, 354 F.3d 1307, 1314 (11th Cir. 2003). Also, the Eleventh Circuit has held: "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decision of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins by Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 826 n.4 (11th Cir. 1997).

In addition, for false arrest and malicious prosecution claims, even if a state official lacked actual probable cause, she is nevertheless entitled to qualified immunity if she had arguable probable cause for the arrest or prosecution. Rushing, 599 F.3d at 1266 ("In

determining whether qualified immunity exists, the issue is not probable cause in fact but arguable probable cause."); Grider, 618 F.3d at 1272 n.25 ("We . . . use the same 'arguable probable cause' standard in the qualified immunity context for both false arrest and malicious prosecution, as both require a violation of the Fourth Amendment."). Arguable probable cause is determined based on an objective standard, and it "exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest." Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002) (quoting Scarborough v. Myles, 245 F.3d 1299, 1302 (11th Cir. 2001)).

Here, Defendant is entitled to qualified immunity. First, Defendant has satisfied the threshold requirement of showing that she was acting within the scope of her discretionary authority. Defendant states in her affidavit that she was working as an officer with the City of McRae Police Department during her interactions with Plaintiff. (Zanders Aff. ¶ 2.) Because Defendant's actions in this case were taken pursuant to her duties as a police officer and were within the scope of her authority, she has shown that she was acting within the scope of her discretionary authority. Lenz, 51 F.3d at 1545; see also Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (holding that law enforcement officer was clearly acting within discretionary authority when he made an arrest pursuant to his duty as a police officer).

Second, for the reasons previously discussed, Defendant has shown that actual probable cause existed for Plaintiff's arrest and prosecution. As a result, Defendant has undoubtedly satisfied the lower standard of showing arguable probable cause, which is all that is required for her to be entitled to qualified immunity. See Lee, 284 F.3d at 1195

(noting that "*arguable* probable cause . . . is 'all that is required for qualified immunity to be applicable to an arresting officer'" (quoting Scarbrough, 245 F.3d at 1302)). As a result, Defendant is entitled to qualified immunity with respect to Plaintiff's claims.

In sum, because there was probable cause for Plaintiff's arrest and prosecution, and because Defendant is entitled to qualified immunity on Plaintiff's claims, summary judgment should be awarded in Defendant's favor.[10]

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS AND RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED** (doc. no. 24), that a final judgment be **ENTERED** in favor of Defendant, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 5th day of June, 2012, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[10] Having concluded that probable cause existed for Plaintiff's arrest and prosecution, and that Defendant is entitled to qualified immunity, the Court will not reach Defendant's remaining arguments for summary judgment.

13